BANDITREE, INC., Appellant, v CALPO, INC., et al., Respondents.

First Department, March 28, 1989

### APPEARANCES OF COUNSEL

*Frank H. Penski* of counsel *(Vicki L. Safran* with him on the brief; *Nixon, Hargrave, Devans & Doyle,* attorneys), for appellant.

*Barry J. Boxer* of counsel *(Rose & Boxer,* attorneys), for respondent.

## OPINION OF THE COURT

KUPFERMAN, J. P.

Pursuant to the terms of a promissory note, dated December 2, 1985, the firm of Nixon, Hargrave, Devans & Doyle, in letters dated July 27, 1987, gave notice of default, on behalf of its client Banditree, Inc., to defendant Calpo, Inc., the maker, and defendants Tollman and Hundley, guarantors of the note. The letters stated that unless the default was cured within 10 days, the entire amount outstanding would be due and payable without further notice. Thereafter, on August 17, 1987, having received no response from defendants, Banditree commenced this action to recover on the note and moved, pursuant to CPLR 3213, for summary judgment in lieu of a complaint.

In denying plaintiff's motion, the IAS court found that the "holder" of the note as specified in the note was Banditree and its attorneys were Gilbert, Frank and Milom. It held that, while it would appear that Nixon, Hargrave was acting as the agent of Banditree and was authorized to send the letters, absent additional evidence, the declarations of an alleged agent are not admissible as proof of the agency and "[s]ince no confirmation was made available at the time of the purported notice, defendants had no way of knowing whether the notice was authorized and, therefore, had no obligation to act upon it." We disagree.

The principal issue presented is whether the notice given was sufficient under the terms of the note.

The provisions of the Uniform Commercial Code are to be liberally construed and applied "to permit the continued expansion of commercial practices through custom, usage and agreement of the parties". (UCC 1-102 [2] [b]; *Horn Waterproofing Corp. v Bushwick Iron & Steel Co.,* 66 NY2d 321, 327, n 6.) Certainly, it is customary, in commercial transactions, for attorneys to give notices of default and demand payment of debts on behalf of their clients. Under the general provisions of the code, it is clear that the requirement of "giving" or "sending" notice is satisfied even though the notice is not actually received, as long as reasonable steps were taken to notify the other party *(Dougherty v 425 Dev. Assocs.,* 93 AD2d 438, 442), although there is no question in this case that the letters were actually received by the defendants. In addition, the courts have liberally construed notice requirements under the UCC *(see, e.g., Chase Manhattan Bank v Natarelli,* 93 Misc 2d 78, 90-91).

The note provides that "in no event shall default take place until the holder shall have notified the maker of the existence of such default." The note further contains the names and addresses of the holder and the maker and provides that any notice required to be given in accordance with the terms of the agreement "shall be deemed given upon mailing by certified mail to the parties at the addresses designated" with a copy to their attorneys, whose names and addresses are provided. It is evident that the attorneys named in the note are designated solely for the purpose of receiving not giving notice. Such notice was also not required to be given by certified mail, but if such method were used, the notice would be deemed given when mailed rather than when received.

While there is little New York case law on this precise issue and notice requirements have been strictly construed in landlord-tenant cases (see, Siegel v Kentucky Fried Chicken, 67 NY2d 792), the note states that it is to be construed as a Florida obligation, and thus Florida law should be applied. Just as Florida courts, in the interest of achieving uniformity and in the absence of Florida authority to the contrary, review and rely upon the decisions of other code States in interpreting the code, we do likewise (see, Executive Bank v Tighe, 54 NY2d 330, 335, n 1).

An attorney is ordinarily viewed as an agent of his client, and an act done by an agent on behalf of the principal within the scope of the agency is not the act of the agent, but of the principal at whose direction it is done (Johnson v Estate of Fraedrich, 472 So 2d 1266 [Fla]; see also, City of Des Moines v Civil Serv. Commn., 334 NW2d 133, 135 [Iowa]; Bulldog Concrete Forms Sales Corp. v Taylor, 195 F2d 417, 423 [7th Cir]). "The general rule is that an attorney, on behalf of his client, has implied authority to do all acts necessary or incidental to the accomplishment of the purpose for which he was employed or retained. * * * This would include the giving of notice in a transaction in which notice is required. See Restatement, Agency 2d, § 268 (2), (1) (c) and Comment a." (Bob Holding Corp. v Normal Realty Corp., 223 Md 260, 265-266, 164 A2d 457, 460.)

The notice of default in this case specifically stated that it was being given on behalf of Banditree, the holder named in the note, and that payment was to be made to Banditree, not to its attorneys. Under the circumstances, Calpo, by failing to respond to such notice, acted at its peril.

Contrary to the IAS court's conclusion, unless Calpo had notice that the Nixon, Hargrave firm had an interest adverse to Banditree, the notice given was given by Banditree where, as the court found, the Nixon Hargrave firm was apparently authorized to give it. *(See,* Restatement [Second] of Agency § 268.) Moreover, the Restatement does not include a requirement that the agent submit independent proof of his agency in order to render notice effective *(id.,* § 7, comment d). Finally, on Banditree's motion for summary judgment in lieu of complaint, when faced with Banditree's statement that it notified defendants of the default in the July 27, 1987 letters, thus ratifying its attorneys' act, Calpo came forward with no evidence to the contrary.

There is no merit to defendants' claims of waiver and estoppel since in the first letter relied upon, Banditree merely agreed to hold the creation of any default under the note in abeyance until after a certain meeting and, in the second letter relied upon, wanted to "discuss the disposition" of the note. Neither letter evidenced any waiver of the terms of the note, and defendants fail to allege any change of position to their detriment, thus negating any estoppel claim. Likewise, the notices of default adequately apprised defendants of Banditree's exercise of its option under the note to accelerate payment of the full amount outstanding.

Accordingly, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered February 29, 1988, which denied Banditree's motion for summary judgment in lieu of a complaint, should be reversed, on the law, and the motion granted, with costs.

SULLIVAN, MILONAS and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on February 29, 1988, reversed, on the law, and the motion for summary judgment granted. Appellant shall recover of respondents $250 costs and disbursements of this appeal.