OPINION OF THE COURT
Peter M. Forman, J.
This action seeks to quiet title for the real property located at 142 South Vacation Drive in the Town of East Fishkill (the premises). Specifically, the verified complaint seeks an order nullifying a deed purporting to convey plaintiffs interest in the premises to defendant Equity Holding Corp., on the grounds, inter alia, that this conveyance violated the Home Equity Theft Protection Act (HETPA). The verified complaint also seeks an order discharging the mortgage that encumbers the premises, on the grounds that it has been rendered unenforceable due to the expiration of the statute of limitations. Finally, the verified complaint seeks an order directing defendant New York Mutual Underwriters (NYMU) to deliver the loss proceeds of a fire insurance policy to plaintiff.
*419 Plaintiff has moved for summary judgment granting the relief requested in the verified complaint. Defendants, JPMor-gan Chase Bank, N.A. and US Bank, N.A., oppose this motion, and cross-move for summary judgment dismissing the verified complaint as against them (collectively, the bank defendants).
For the reasons stated herein, plaintiff’s motion for summary judgment is granted in part and denied in part, and the bank defendants’ cross motion is denied.
Background
In 1979, plaintiff and her former husband, Richard Holbrit-ter, acquired title to the premises. In 1990, Holbritter conveyed his interest in the premises to plaintiff.
On or about April 30, 2004, plaintiff entered into a mortgage agreement encumbering the premises as security for a $290,000 loan.
By deed dated January 19, 2007, plaintiff conveyed title to the premises to herself and her husband, Paul Puzzuoli.
By mortgage dated January 24, 2007, plaintiff and her husband entered into a second mortgage agreement encumbering the premises as security for a $116,768.78 loan, with a negative amortization of $128,445.65. On that same date, they entered into a consolidated negative amortization mortgage agreement, as security for a consolidated loan in the principal amount of $438,900 (the mortgage).[1]
Plaintiff’s husband died on December 14, 2008. In February of 2009, plaintiff failed to make the monthly payment required by the mortgage. It is undisputed that plaintiff has not made, or attempted to make, any payments on the mortgage since that time.
On July 27, 2009, US Bank commenced an action to foreclose the mortgage by filing a summons, complaint, and notice of *420 pendency with the Dutchess County Clerk (US Bank N.A. v Puzzuoli, Sup Ct, Dutchess County, Forman, J., index No. 5740/2009) (the foreclosure action). The seventh paragraph of the verified complaint accelerates the entire amount due under the mortgage.
Plaintiff states that she was approached by an entity known as Northern American Realty Services, Inc. (NARS) in November of 2009. Plaintiff states that NARS presented her with a proposal that would allegedly allow her to preserve her equity in the premises by transferring title to a trust that would be managed by a nonprofit organization. On or about August 11, 2010, plaintiff signed a deed purporting to convey title to the premises to Equity Holding Corp., as trustee for the Puzzuoli Trust No. 10073351. The Equity Holding deed was recorded in the Dutchess County Clerk’s Office on the same date that it was signed.
An order of reference was granted in the foreclosure action on November 25, 2009. By letter dated October 21, 2010, counsel for US Bank requested permission to withdraw that order of reference. On or about December 2, 2010, counsel retracted that request, and asserted that US Bank would be seeking a judgment of foreclosure. However, other than renewing the notice of pendency on July 24, 2012, US Bank did not make any effort to prosecute the foreclosure action over the next 33 months.
In September of 2013, US Bank filed a motion to vacate the November 25, 2009 order of reference, and for a new order of reference. US Bank sought this relief on the grounds that the affidavit of amount due that had been submitted in support of the 2009 motion “may not have been correctly notarized under New York law.”
By decision and order dated October 25, 2013, this court granted that portion of the motion that sought to vacate the November 25, 2009 order of reference. However, this court denied the motion for entry of a new order of reference. Instead, this court dismissed the foreclosure action based upon US Bank’s prolonged and unexplained failure to diligently prosecute that action (CPLR 3215 [c]).
In a July 27, 2015 letter to plaintiff, counsel for the bank defendants acknowledged that the foreclosure action had been dismissed nearly two years earlier. Counsel also acknowledged that the complaint in the foreclosure action accelerated the full amount due under the mortgage. Finally, counsel stated that this acceleration was revoked, effective immediately.
*421 On January 6, 2016, a fire caused significant damage to the premises. On the date of the fire, the premises were covered by a fire insurance policy issued by NYMU (the policy). The policy contains a standard mortgagee clause stating that a covered loss will be paid to the mortgagee to the extent of its interest in the premises.
Plaintiff asserts that NYMU is prepared to pay the covered loss by issuing a joint check, payable to both plaintiff and one or more of the bank defendants. Plaintiff has objected to the issuance of a joint check on the grounds that the mortgage should be cancelled due to the expiration of the statute of limitations. Accordingly, plaintiff commenced this action seeking a determination that she is vested with sole and unencumbered title to the premises, and that she alone is entitled to the proceeds of the policy.[2]
Discussion
A. The Equity Holding Deed
Plaintiff alleges that the Equity Holding deed is null and void because it was the product of an illegal scheme that violated the HETPA. Plaintiff also alleges that this deed is null and void because there is not, and has never been, a Puzzuoli Trust, and because no consideration was provided in return for this deed.
Plaintiff has produced evidence establishing, on a prima facie basis, that the summons and complaint were served on Equity Holding’s registered agent for service on June 30, 2016. Equity Holding has never formally appeared in this action, and is currently in default.
“Given that in default proceedings the defendant has failed to appear and the plaintiff does not have the benefit of discovery, the affidavit or verified complaint need only allege enough facts to enable a court to determine that a viable cause of action exists.” (Woodson v Mendon Leasing Corp., 100 NY2d 62, 70-71 [2003]; see also Tarry town Professional Ctr, Inc. v Family Medicine of Tarrytown & Ossining, LLP, 93 AD3d 712, 713 [2d Dept 2012]; Maida v Lessing’s Rest. Servs., Inc., 80 AD3d 732, 733 [2d Dept 2011]; Alterbaum v Shubert Org., Inc., 80 AD3d 635, 636 [2d Dept 2011].) “Indeed, defaulters are *422 deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them.” (Woodson at 71; see also LIUS Group Intl. Endwell, LLC v HFS Inti, Inc., 92 AD3d 918, 919 [2d Dept 2012].)
HETPA was adopted to protect financially unsophisticated homeowners who have defaulted on their mortgages, and who are therefore deemed vulnerable to predatory, fraudulent or deceptive schemes designed to deprive them of their home equity (Real Property Law § 265-a [1]). It applies to any sale of owner-occupied residential real property that is the subject of a notice of pendency in a foreclosure action (Real Property Law § 265-a [2] [c]). The potential remedies for a breach of the statute include the right to bring an action for equitable relief (Real Property Law § 265-a [9]).
Plaintiff has submitted competent and admissible evidence demonstrating that the Equity Holding deed should be nullified on the grounds that it was the product of an illegal scheme to deprive plaintiff of her equity in the premises. Plaintiff has also demonstrated that this deed should be nullified for lack of consideration, and on the grounds that there has never been a Puzzuoli Trust. Therefore, plaintiff is entitled to judgment nullifying the Equity Holding deed, and directing the Dutchess County Clerk to cancel that deed of record (RPAPL 1521 [1]).[3]
B. The Mortgage
The bank defendants oppose plaintiffs request to cancel the mortgage on the grounds, inter alia, that plaintiff lacks standing to assert this claim because she conveyed her interest in the premises to Equity Holding while the foreclosure action was pending. This argument would clearly prevail if the Equity Holding deed had been a valid conveyance (see Terrapin Indus., LLC v Bank of N.Y, 137 AD3d 569, 570 [1st Dept 2016]; Guccione v Estate of Guccione, 84 AD3d 867, 870 [2d Dept 2011]; NYCTL 1996-1 Trust v King, 304 AD2d 629, 630-631 [2d Dept *423 2003]). However, plaintiff has alleged (and, in fact, established) that the Equity Holding deed is an invalid instrument constituting a removable cloud on the title to the premises. (See Acocella v Bank of N.Y. Mellon, 127 AD3d 891, 893 [2d Dept 2015].) Therefore, plaintiff has standing to bring this quiet title action. (Pirrelli v OCWEN Loan Servicing, LLC, 129 AD3d 689, 693 [2d Dept 2015] [plaintiffs had standing to bring an action to invalidate a mortgage where they alleged that the deed that purportedly conveyed title to the premises to a third party had been fraudulently obtained].)
The bank defendants also oppose plaintiffs request to cancel the mortgage on the grounds that there is no justiciable controversy. Specifically, the bank defendants assert that the foreclosure action has been dismissed, that the loan acceleration has been revoked, and that no new foreclosure action has been commenced. Therefore, the bank defendants assert that plaintiffs request for declaratory relief is premature, and that this action must be dismissed.
When a homeowner seeks a declaratory judgment that a party lacks standing to commence foreclosure proceedings due to an alleged defect in the mortgage documents, that action will not be deemed ripe for judicial review in the absence of a pending foreclosure action (see Acocella v Wells Fargo Bank, N.A., 139 AD3d 647, 649 [2d Dept 2016]; Jahan v U.S. Bank N.A., 127 AD3d 926, 927 [2d Dept 2015]). However, there is a critical distinction between a claim that a party lacks standing to foreclose a mortgage, and a statutory quiet title action that seeks to cancel a mortgage due to the expiration of the statute of limitations pursuant to RPAPL 1501 (4).
Any person with an estate or interest in real property may commence a statutory quiet title action to cancel a mortgage on the grounds that the statute of limitations has expired, and the absence of a pending foreclosure action will not preclude judicial review of that action. (See JBR Constr. Corp. v Staples, 71 AD3d 952, 953 [2d Dept 2010] [although no foreclosure action was pending, the mortgage was canceled because any foreclosure action would be time-barred by the applicable six-year statute of limitations]; LePore v Shaheen, 32 AD3d 1330, 1331 [4th Dept 2006] [the mortgage was canceled where plaintiff established that, if defendant attempted to commence a foreclosure action, it would be time-barred by the statute of limitations].) Therefore, because plaintiff seeks to cancel the *424 mortgage on statute of limitations grounds, this statutory quiet title action is ripe for judicial review.
“The law is well settled that, even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt.” (EMC Mtge. Corp. v Patella, 279 AD2d 604, 605 [2d Dept 2001]; see also Goldman Sachs Mtge. Co. v Mares, 135 AD3d 1121, 1122 [2d Dept 2016]; Lavin v Elmakiss, 302 AD2d 638, 639 [3d Dept 2003].) Stated differently, “once a mortgage debt is accelerated, the borrowers’ right and obligation to make monthly installments ceased and all sums become immediately due and payable, and the six-year Statute of Limitations begins to run on the entire mortgage debt.” {EMC Mtge. Corp. at 605 [internal quotation marks and citations omitted].) After that mortgage debt has been accelerated, the acceleration may only “be revoked . . . through an affirmative act occurring within the . . . limitations period.” (Lavin v Elmakiss at 639; EMC Mtge. Corp. v Patella at 606.)
The verified complaint and plaintiff’s original motion papers assert that the six-year limitations period began to run against the entire amount due under the mortgage in February of 2009, when plaintiff missed her first monthly payment. There is no merit to this claim. Rather, the six-year limitations period only began to run on the entire debt once US Bank accelerated the mortgage.
The bank defendants argue that the statute of limitations did not begin to run until August 7, 2009, when plaintiff was served with the verified complaint. In the alternative, the bank defendants argue that the earliest possible date that the limitations period could have started to run was July 27, 2009, when the foreclosure action was commenced by filing the verified complaint in the Dutchess County Clerk’s Office. Under either scenario, the bank defendants argue that the July 27, 2015 letter affirmatively revoked the acceleration of the mortgage within the applicable six-year limitations period.
In opposing the cross motion, plaintiff has effectively abandoned the claim that the six-year limitations period began to run against the entire mortgage when plaintiff missed her first monthly payment. Rather, plaintiff asserts that the limitations period began to run on July 23, 2009, which is the date that appears on the summons, complaint, and notice of pendency. In the alternative, plaintiff argues that the bank de *425 fendants elected to accelerate the mortgage no later than July 27, 2009, which is the date that the complaint was verified.[4]
The seminal case addressing the issue of mortgage acceleration is Albertina Realty Co. v Rosbro Realty Corp. (258 NY 472 [1932]). In Albertina, the lender filed a foreclosure action after the borrower failed to make a timely mortgage payment. Three days after the action was filed, but prior to service of the summons and complaint, the borrower tendered the delinquent payment. The lender refused the payment on the grounds that the complaint had accelerated the entire amount due under the mortgage. Although the borrower argued that the lender had not effectively accelerated the mortgage because the complaint had not yet been served, the Court of Appeals rejected this construction of the law as “too narrow.” (Id. at 475.)
A mortgage is accelerated when the lender elects to exercise its right of acceleration, not when the borrower receives notice of that election. (Id. at 476 [“To elect is to choose. The fact of election should not be confused with the notice or manifestation of such election”].) For instance, when a verified complaint contains an acceleration clause, the “unequivocal overt act” of filing that document in the courthouse constitutes a valid election of the right to accelerate. (Id.; see also Fannie Mae v 133 Mgt., LLC, 126 AD3d 670, 670 [2d Dept 2015] [“the plaintiffs commencement of the action and filing of a notice of pendency constituted a valid election to accelerate the maturity of the debt”]; Charter One Bank, FSB v Leone, 45 AD3d 958, 958 [3d Dept 2007] [“plaintiff’s act of commencing the action and the filing of a lis pendens constitutes a valid election to accelerate the maturity of the unpaid principal balance and accrued interest”]; Clayton Natl. v Guldi, 307 AD2d 982, 982 [2d Dept 2003] [“The filing of the summons and complaint and lis pendens in an action commenced in 1992 accelerated the note and mortgage”].)
Once the complaint has been filed, a tender of payment prior to service of the pleadings does not “destroy the effect of the sworn statement that plaintiff ha[s] elected.” (Albertina at *426 476.) Nonetheless, the bank defendants argue that “it is the filing and service of the Complaint which accelerates the loan” (Raindorf ¶ 25 n 2), and that “for the acceleration to be effective, the mortgagor must be duly served with the Summons and Complaint” (Hanusek ¶ 10).
The cases relied upon by the bank defendants in support of this claim are inapposite. For instance, in Logue v Young (94 AD2d 827 [3d Dept 1983]), the Court had no reason to draw a distinction between the act of filing and the act of service because the delinquent installment payment was tendered after both acts had been accomplished. In Sarva v Chakravorty (34 AD3d 438 [2d Dept 2006]), the lender expressed the “belief” that he sent a letter to the borrower accelerating the debt. However, the borrower denied receipt of the alleged letter, the alleged letter was not placed in evidence, and the lender accepted periodic installment payments for years after the letter was allegedly sent. Therefore, the Court concluded that the evidence failed to establish that the debt was accelerated prior to the commencement of the foreclosure action. In Wells Fargo Bank, N.A. v Burke (94 AD3d 980 [2d Dept 2012]), the commencement of a foreclosure action was not a valid election because the foreclosing lender did not have standing to commence that action. The commencement of a second foreclosure action after the lender acquired an interest in the mortgage was not a valid election because the borrower was not a party to that action. Therefore, the Court concluded that the election was not valid until the two foreclosure actions were consolidated.
These cases do not undermine the fundamental rule that “to elect is to choose,” and that “the fact of election should not be confused with the notice or manifestation of such election.” (Albertina at 476; see also City Sts. Realty Corp. v Jan Jay Constr. Enters. Corp., 88 AD2d 558 [1st Dept 1982] [a borrower’s unsuccessful attempt to tender payment prior to service of the mortgage foreclosure complaint did not impair that election]; Kirsch v Badler, 3 AD2d 921 [2d Dept 1957] [a letter exercising the right to accelerate a mortgage was an affirmative act constituting a valid election of that right, despite the fact that the borrowers refused delivery of that letter].)
While some of the cases relied upon by the bank defendants state that a borrower must be provided clear and unequivocal notice of the lender’s election, those cases do not state that a complaint must be served before an election will be valid. *427 Rather, these cases state that, when a debt is accelerated by demand, that election must be communicated in clear and unequivocal language (see e.g. Goldman Sachs Mtge. Co. v Mares, 135 AD3d 1121, 1122-1123 [3d Dept 2016] [a letter stating that the failure to bring a mortgage current by a date certain “may result in acceleration” was nothing more than a letter discussing a possible future event, and did not qualify as an election to accelerate the debt]).
In Albertina, the Court held that the filing of a complaint qualifies as an “unequivocal overt act.” However, the Court also expressly declined to adopt a bright-line rule identifying the earliest point at which the right of acceleration could be exercised, or the minimum steps that a lender must take to make that election. (Albertina at 476 [“It is unnecessary to decide just what a holder of a mortgage must do to exercise the right of election, under an acceleration clause”].) Therefore, the question that remains open, and that Albertina did not reach, is whether the act of verifying a complaint alone is a sufficient overt act, or whether the act of filing is also required to give effect to the election.
In 446 W. 44th St., Inc. v Riverland Holding Corp. (267 App Div 135 [1943]), the lender ordered a search of title to the mortgaged premises after the borrower failed to make an installment payment. Although the lender ordered this search “with the evident intention of commencing foreclosure proceedings,” no action was commenced and no pleadings were signed (id. at 136). Under these circumstances, the Second Department concluded that “a mental operation followed by instructions to commence a foreclosure search is not sufficient” for the purpose of an election (id. at 137).
The facts in this case fall between Albertina and River-land. Here, the verified complaint was sworn to on July 24, 2009. Although the verified complaint was not filed until three days later, the act of taking an oath before a notary was an affirmative act of substantially greater significance than a mere operation of the mind, or a preliminary investigative step in anticipation of a potential foreclosure action. Rather, the verification is an unequivocal overt act that exposes the person taking the oath to potential criminal or professional disciplinary consequences in the event that the verification was falsely provided (Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3020:l).
Although the verified complaint was not filed until several days later, the choice to accelerate the mortgage was made on *428 July 24, 2009, when the oath was administered. (Gold v Vanden Brul, 28 Misc 2d 644, 644 [1961] [the “sworn act” of verifying the foreclosure complaint “constituted an election to accelerate”]; see also Albertina at 476 [stating that a tender of payment does not “destroy the effect of the sworn statement that plaintiff ha [s] elected”].) As such, the six-year statute of limitations expired prior to the attempted revocation of that acceleration on July 27, 2015. (See Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d 985 [2d Dept 2016]; UMLIC VP, LLC v Mellace, 19 AD3d 684 [2d Dept 2005]; EMC Mtge. Corp. v Patella, 279 AD2d 604 [2d Dept 2001].)
C. The Policy
Since the mortgage has been cancelled, plaintiff is entitled to a declaration that the bank defendants do not have any interest in the proceeds of the policy. Plaintiff’s motion for summary judgment seeking that relief is granted.
Plaintiff also seeks an order directing NYMU to pay the policy’s loss proceeds to her. However, NYMU’s third, fourth and fifth affirmative defenses are not impacted by the cancellation of the Equity Holding deed or the mortgage. Rather, these affirmative defenses relate to specific policy provisions concerning the amount and timing of the payment of loss proceeds, and the extent of NYMU’s obligation if other insurance coverage is available. To the extent that plaintiff’s motion seeks an order dismissing the third, fourth and fifth affirmative defenses, that motion is denied. Based on the foregoing, it is hereby ordered that the deed purporting to convey plaintiff’s interest in the premises to Equity Holding Corp., as trustee for the Puzzuoli Trust No. 10073351, recorded in the Dutchess County Clerk’s Office on August 11, 2010 as document No. 02-2010-3929 is hereby nullified; and it is further ordered that pursuant to RPAPL 1521 (1), the Dutchess County Clerk shall cancel the deed recorded in the Dutchess County Clerk’s Office on August 11, 2010 as document No. 02-2010-3929; and it is further ordered that Equity Holding Corp., as trustee for the Puz-zuoli Trust No. 10073351 is forever barred from asserting any claim to or interest in the premises by virtue of the cancelled deed; and it is further ordered, that the mortgage is cancelled due to the expiration of the six-year statute of limitations; and it is further ordered that pursuant to RPAPL 1521 (1), the Dutchess County Clerk shall cancel the mortgage encumbering the premises that is dated January 24, 2007, and recorded in the Dutchess County Clerk’s Office on February 6, 2007 as doc *429 ument No. 01-2007-1890; and it is further ordered that pursuant to RPAPL 1521 (1), the Dutchess County Clerk shall cancel the mortgage encumbering the premises that is dated January 24, 2007, and recorded in the Dutchess County Clerk’s Office on February 6, 2007 as document No. 01-2007-1884; and it is further ordered that pursuant to RPAPL 1521 (1), the Dutchess County Clerk shall cancel the mortgage encumbering the premises that is dated April 30, 2004, and recorded in the Dutchess County Clerk’s Office on May 20, 2004 as document No. 01-2004-13311; and it is further ordered that JPMorgan Chase Bank, N.A., is forever barred from asserting any claim to or interest in the premises by virtue of the cancelled mortgages; and it is further ordered that US Bank, N.A., is forever barred from asserting any claim to or interest in the premises by virtue of the cancelled mortgages; and it is further ordered that JPMorgan Chase Bank, N.A., is forever barred from asserting any claim to or interest in the policy by virtue of the cancelled mortgages; and it is further ordered that US Bank, N.A., is forever barred from asserting any claim to or interest in the policy by virtue of the cancelled mortgages; and it is further ordered that all other motions and cross motions are denied.

. The original mortgagee was Washington Mutual Bank (WAMU). During the 2008 financial crisis, JPMorgan Chase acquired the assets of WAMU after it was seized by the Office of Thrift Supervision and placed into receivership with the Federal Deposit Insurance Corporation.
The mortgage was also the subject of a series of assignments, the last of which purportedly assigned the mortgage to US Bank, as trustee for WAMU Mortgage Pass through Certificate for WMALT Series 2007-0A3.
Given the confusion that has often accompanied interests in mortgages during the period of time surrounding the fiscal crisis, particularly when a financial institution was placed in receivership or the mortgage was bundled with other loans in a mortgage-securitization trust, plaintiff has named both JPMorgan Chase Bank and US Bank as defendants in this quiet title action.

. This action was originally assigned to Hon. Christine A. Sproat, JSC. However, because it is related to the foreclosure action, Judge Sproat referred this action to this court by order dated October 20, 2016.

. Although Equity Holding has not formally appeared in this action, plaintiff has produced an August 8, 2016 letter from one of the owners of Equity Holding responding to the allegations contained in the complaint. That letter admits that, although the Puzzuoli Trust was contemplated when the August 11, 2010 deed was signed, that trust was never actually created. That letter also admits that Equity Holding has “no interest whatsoever” in the premises, and that Equity Holding is prepared to sign a quitclaim deed conveying any interest that it might arguably have in the premises to plaintiff. These unsworn admissions corroborate the prima facie showing that plaintiff has made out in her motion papers.

. Although these arguments were not presented in plaintiff’s original motion papers, the court will consider these arguments because the bank defendants had the opportunity to respond and to submit reply papers on the cross motion. (Matter of Health Ins. Plan of Greater N.Y. v Board of Assessors, 93 AD3d 795, 796 [2d Dept 2012]; Valure v Century 21 Grand, 35 AD3d 591, 592 [2d Dept 2006].)