| |
|---|
| **O'Byrne v Smith** |
| 2024 NY Slip Op 33682(U) |
| October 15, 2024 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2020-3036/L |
| Judge: Rita Mella |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

New York County Surrogate's Court
DATA ENTRY DEPT.

OCT 1 5 2024

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
Charles J. O'Byrne and H. Carter Hood, as Executors of
the Estate of

        JEAN KENNEDY SMITH,                    DECISION and ORDER
                    Deceased,

                            Plaintiffs,       File No.: 2020-3036/L

     -against-

William K. Smith,                        [Transferred from Supreme
                   Defendant.      Court, Index 653090/2022]
------------------------------------------------------------------x
M E L L A, S.:

        The following papers were considered on this motion for summary judgment in lieu of complaint:

| Papers Considered | Numbered |
|---|---|
| Plaintiffs' Notice of Motion for Summary Judgment in Lieu of Complaint, with Affidavit of H. Carter Hood in Support, attaching Exhibits | 1, 2 |
| Plaintiffs' Memorandum of Law in Support | 3 |
| Notice of Cross-Motion of Defendant to Remove to Surrogate's Court [previously granted] and in Opposition to Motion, with Affidavit of William K. Smith, in Opposition, attaching Exhibits | 4, 5 |
| Letter from Ross Katz, Esq., attaching Exhibit A to the Affidavit of William K. Smith, | 6 |
| Defendant's Memorandum of Law in Opposition to Motion | 7 |
| Plaintiffs' Reply Memorandum of Law in Further Support of Motion | 8 |
| Plaintiffs' Supplemental Brief re: Interest Calculation | 9 |
| Defendant's Supplemental Submission re: Interest Calculation | 10 |
| Plaintiffs' Reply Brief | 11 |
| Defendant's Further Submission on Interest | 12 |

        At the call of the calendar, the court granted the motion of the Executors of the estate of

Jean Kennedy Smith for summary judgment in lieu of complaint regarding two promissory notes

issued to decedent (CPLR 3213).[1] The court also requested and received additional submissions

---

[1] The matter was transferred to this court from New York County Supreme Court (CPLR 325[e]).

[* 1]

from the parties addressed to whether interest under the promissory notes can be compounded at the default rate, and thus, the court also determines how such interest should be calculated.[2]

Undisputed Facts

Decedent Jean Kennedy Smith, who died on June 17, 2020, was a former Ambassador to Ireland and the last surviving sibling of former U.S. President John F. Kennedy, Jr. Plaintiffs, her Executors, Charles O'Byrne and H. Carter Hood (Executors), brought this summary judgment motion in lieu of complaint pursuant to CPLR 3213 for an order directing decedent's son, William Kennedy Smith, M.D. (William), to pay to the estate, as of June 17, 2022, $3,643,438.87 in principal and interest that they claim is due under two promissory notes dated August 2, 2016, one in the amount of $1.3 million and the other in the amount of $1.42 million (Notes).

William does not contest that he received from his mother the principal amounts due under each Note. William also does not contest the genuineness of the Notes or that he signed them.

The Notes have almost identical provisions. They each provide that interest at the rate of 1.18%, compounded annually, shall be payable in arrears beginning on August 1, 2017, and each August 1 thereafter until their Maturity Date (discussed below). Each Note further provides that a 6% "Default Rate" of interest applies in the "Event of Default," and includes as an Event of Default the "failure of the Borrower to pay in full any amount due thereunder within thirty (30)

_____

[2] In addition to the requested submissions, the Executors also attempted to file after the motion was submitted an affirmation of legal services of their counsel requesting that the court award the firm its legal fees for services rendered to the Executors in connection with the motion based on Paragraph 7 of the Notes, which provides for the Borrower to pay the Lender's legal fees in certain circumstances. The court notified the parties that, under the circumstances, only the supplemental submissions the court had requested would be considered part of the record on the motion. Accordingly, the court has not addressed the legal fee issue, which the Executors also did not raise in their notice of motion (see CPLR 2214[a]).

days after the date when due" (Paragraphs 5[a] of the Notes). William concedes that he made no payments under the Notes to decedent or her estate. There is thus no dispute that William failed to make the first interest payment within 30 days of August 1, 2017, as the Notes required.

Discussion

Upon review of the motion papers and after hearing the parties' arguments, the court concluded that the Executors established their entitlement to summary judgment as a matter of law in lieu of complaint by demonstrating that the Notes, indisputably signed by William, are instruments for the payment of money only and that William had made no payments required by the Notes (*see Weissman v Sinorm Deli, Inc.*, 88 NY2d 437, 444 [1996] ["The prototypical example of an instrument within the ambit of the statute is of course a negotiable instrument for the payment of money—an unconditional promise to pay a sum certain, signed by the maker and due on demand or at a definite time"]; *see also Interman Ind. Products v RSM Electron Power*, 37 NY2d 151 [1975]; *Bank of America, N.A. v Filho*, 203 AD3d 594 [1st Dept 2022]; *Maglich v Saxe, Bacon & Bolan*, 97 AD2d 19 [1st Dept 1983]). The standards for denial of a motion for summary judgment in this context are the same as for summary judgment generally. In response, the party opposing summary judgment must come forward with admissible evidence raising questions of material fact as to a defense to payments due under the instruments (*see Bronson v Jacobs*, 195 AD3d 550 [1st Dept 2021]; *Boland v Indah Kiat Finance (IV) Mauritius Ltd.*, 291 AD2d 342 [1st Dept 2002]).

In opposition to the motion, the court further concluded that William failed to raise an issue of fact or any defense to the obligation contained in the Notes to pay the principal and interest due. Specifically, the court determined that William's argument that the Notes do not satisfy the prerequisites for relief under CPLR 3213 was without merit. The procedure for relief

- 3 -

[* 3]

under CPLR 3213 is available, as here, where there are instruments containing an unconditional promise to pay money and proof of nonpayment as required by the Notes (*Blumenstein v Waspit Group, Inc.*, 140 AD3d 620 [1st Dept 2016]).

Additionally, there does not need to be an explicit waiver of all rights regarding defenses to payment of the Notes in order for CPLR 3213 to apply, as William argues. The law is clear that the interposing of defenses that may be extrinsic to the instrument for the payment of money, like the Notes, does not preclude relief under CPLR 3213 (*Alard, LLC v Weiss*, 1 AD3d 131 [1st Dept 2003]). Moreover, the Notes here do not require proof outside their four corners to establish the amounts due and thus come within the ambit of the statute (*compare Matter of Peck*, 191 AD3d 537 [1st Dept 2021]; *US Premium Fin. v Sky Materials Corp.*, 182 AD3d 629 [2d Dept 2020]).[3]

The court also rejected William's claim that decedent intended the amounts borrowed under the Notes to be a gift. He provided no competent evidence to establish the elements of a gift, namely, donative intent, delivery, and acceptance (*see generally Gruen v Gruen*, 68 NY2d 48 [1986]). Nor did he claim that such evidence existed, but he needed to obtain it in discovery (*see* CPLR 3212[f]). The court considered that William does not claim that decedent actually gave William the Notes as evidence of donative intent and delivery (*see Matter of Van Alstyne*, 207 NY 298 [1913] [physical delivery is most complete delivery that can be made and is sufficient to establish gift]; *Langworthy v Crissey*, 10 Misc 450 [Sup Ct, Chautauqua County 1894]; *see also Andrews v Comm'r of Internal Rev.*, 38 F2d 55 [2d Cir 1930, Hand, J.]). Indeed,

---

[3] Although William argues that decedent did not sign the notes and that they contain certain blank spaces, such assertions are insufficient to invalidate the Notes, which contain all material terms and are signed by William, whose signature, as borrower, is all that is required to make them enforceable (*see Lexon Ins. Co. v Sanare Energy Partners, LLC*, 2021 NY Slip Op 30692[U] [Sup Ct, NY County 2021]).

- 4 -

the record is devoid of evidence of decedent's donative intent – either oral or written (*see Sussman v Sussman*, 47 NY2d 849 [1979] [evidence of document signed by decedent as to possible future intention to make donative transfer insufficient to show completed gift]; *Scotti v Barrett*, 149 AD3d 998, 1000 [2d Dept 2017] [beneficiary's allegation that decedent made oral declaration after giving loan to beneficiary, which beneficiary did not repay, that the loan was "a gift," was insufficient to establish that loan was a gift]).

That William subjectively believes his mother intended the Notes to be considered a gift or that she did not seek to enforce the Notes during her life is insufficient proof of delivery or donative intent to create an issue of fact, particularly given the waiver provision of the Notes (*compare Speelman v Pascal*, 10 NY2d 313 [1961] [delivered letter confirming gift of percentages of decedent's share of the profits in musical production sufficient to show donative transfer]; *see also Greene v Greene*, 92 AD3d 838 [2d Dept 2012] [intention or mere words cannot take place of actual surrender of control and authority over item intended to be given]). In any event, such a claim is directly contradicted by the Notes themselves which contain no language that evidences an intent that the Notes could be considered a gift under any circumstances.

Likewise, the court determined that William's defense that the Notes were the product of fraud was not a basis on which to deny summary judgment. In this regard, William failed to offer any evidence that he was induced by a knowing misrepresentation to execute the Notes that he would not have otherwise executed (*see Ambac Assurance Co. v Countrywide Home Loans, Inc.*, 31 NY3d 569, 578-79 [2018] ["The required elements of a common-law fraud claim are a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of

- 5 -

the other party on the misrepresentation or material omission, and injury" (internal quotations and citation omitted)]).

Although in certain cases parol evidence may be used to show that an agreement was not in fact one at all (*see e.g. Greenleaf v Lachman*, 216 AD2d 65 [1st Dept 1995] [parol evidence is inadmissible to contradict, vary, add to, or subtract from terms of integrated agreement; exception to rule allows admission of parol evidence to show that writing, although purporting to be contract, is, in fact, no contract at all]), William provided no evidence that the Notes were a sham or should not otherwise be considered as valid loan instruments. The cases relied upon by William to support his fraud argument are easily distinguishable. For example, *Liberty Pointe Bank v 75 East 125th Street LLC* (95 AD3d 706 [1st Dept 2012]) did not involve the application of CPLR 3213, and unlike here, the evidence provided a "sufficiently substantial and meritorious" showing of fraudulent inducement. Likewise, in *Polygram Holding, Inc. v Cafaro* (42 AD3d 339, 340 [1st Dept 2007]), there were two independent affidavits providing "first-hand accounts . . . that the loans at issue were meant as compensation to defendant but would be carried on the books as loans merely to appease the parent company."

The court also dismissed as meritless William's argument that summary judgment is precluded because (1) enforcement of the Notes is in the nature of "retaliation" by Co-Executor O'Byrne in response to William's inquiries into O'Byrne's conduct as Co-Executor, among other things, and (2) the Executors, by allegedly not enforcing debts that William's siblings owe the estate in the same manner as these Notes, treated him unequally. Notably, William provided no authority to support his contention that claims of "retaliation" and "unequal treatment" provide a defense to payment of the Notes. As the Executors point out, the acts they took in bringing this motion in lieu of complaint were fully consistent with their duty to marshal decedent's assets

- 6 -

(*see Matter of Schultz*, 104 AD3d 1146 [4th Dept 2013] [fiduciary has duty of active vigilance in the collection of assets belonging to the estate]).

As for William's defenses grounded on waiver and estoppel, the court concluded that they too were insufficient to defeat summary judgment. He claimed that decedent's failure to seek payment from him during life constituted a waiver of her rights as lender under the Notes. He also claimed that the Executors' failure to mention the 6% Default Rate of interest during the two years they engaged in settlement negotiations with him and his three siblings (who are not parties here) estops the Executors from now seeking to impose the Default Rate from August 31, 2017 (30 days after the payment was first due on August 1, 2017).

William's waiver argument, however, is explicitly refuted by paragraph 6 of the Notes, which states, "[n]o delay or omission by the Lender [defined to include successors or assigns] or other holder hereof in exercising any right or power hereunder shall operate as a waiver of such right or power, and a waiver on one occasion shall not be considered as a waiver or a bar to the exercise of a right on any other occasion . . . ." (*see Banditree, Inc. v Calpo, Inc.*, 146 AD2d 74, 77 [1st Dept 1989]). Case law does not support William's waiver argument, either (*see e.g. Flushing Unique Homes, LLC v Brooklyn Fed. Sav. Bank*, 100 AD3d 956 [2d Dept 2012] [delay in enforcement of promissory note did not constitute a waiver]).[4] Moreover, even if this provision of the Notes were not sufficient to resolve against William his defense of waiver, the Notes further provide in Paragraph 14 that any "amendment, modification or waiver of any provision" be in

---

[4] The only authority William cites for the proposition that the failure to seek payment waived the lender's rights under the Notes is a bankruptcy decision from the Seventh Circuit Court of Appeals, *Matter of Chappell* (984 F2d 775, 780-82 [7th Cir. 1993]). The determination there that a waiver occurred due to the failure to make a timely claim pursuant to a section of the Bankruptcy Code is not analogous to the situation here.

writing and signed by the parties. No such writing or evidence of an agreement to change the terms of the Notes has been offered on this motion (*see generally* GOL 15-301).

As to estoppel, William has failed to establish that the Executors should be estopped from enforcing the Notes on the basis of their settlement negotiations with him (*see Flushing Unique Homes*, 100 AD3d at 958 [lender's delay in seeking payment after maturity date insufficient to make out estoppel]; *Equator Int'l Inc. v NH St. Invs., Inc.*, 43 Misc 3d 251 [Sup Ct, NY County 2014]; *see also Kiernan v Long Island R.R.*, 209 AD2d 588 [2d Dept 1994] [ongoing settlement negotiations are insufficient to estop party from asserting statute of limitations]; *Murphy v Wegman's Food Market, Inc.*, 140 AD2d 973 [4th Dept 1988] [same]).[5]

In opposition to the motion, William also challenged the Executors' claim that, if he were liable under the Notes, the 6% Default Rate of interest should run from August 31, 2017 (30 days from the date the first payment was due). William contended that there is "contradictory and ambiguous language [in the Notes] on the interplay between the maturity date and an event of default" (William Aff. in Opposition, at paragraph 16). However, review of the language of the Notes reveals that there is no ambiguity or conflict. The terms "Maturity Date" and "Event of Default" are defined separately to include various possible events or circumstances, and those definitions do not conflict with each other.

Paragraph 1(b) of each Note provides that "[t]he entire unpaid principal balance of this Note, together with all accrued but unpaid interest shall be fully due and payable, without notice,

---

[5] To support his estoppel argument, William offered a copy of a multipage chart entitled "Jean Kennedy Smith Equalization Analysis," and the Executors objected pursuant to CPLR 4547, which provides that evidence of offers to compromise are inadmissible. The court agrees that this evidence is barred by CPLR 4547 because it was generated only for possible settlement purposes and is not being offered for some other purpose like "proving bias or prejudice of a witness [or] negating a contention of undue delay," which falls outside the scope of CPLR 4547. Consequently, the court did not consider it as admissible evidence in opposition to the motion.

- 8 -

on the earlier of the following events (the 'Maturity Date') [emphasis added]." Four "events" are then specified in subsection (i) through (iv) of this paragraph: "(i) the two-year anniversary of the Lender's death; (ii) August 1, 2025; (iii) Breach of any provision of this Note or any provision of a security interest or mortgage granted as collateral security for this Note; (iv) Filing by the Borrower of an assignment for the benefit of creditors, bankruptcy or other form of insolvency."

Although it could be argued that the "earlier" to occur of these events was the "breach of any provision of this Note" in subsection (iii), when William failed to make the required interest payment by or on August 1, 2017, as required, the Executors do not make that argument and for the purposes of this motion state that the Maturity Date is two years after decedent's death or June 17, 2022. The court does not disagree with this conclusion. However, the Executors are not relying on the Notes' "Maturity Date" provisions to support their claim that the Default Rate of interest applies as of August 31, 2017.

Instead, the Executors rely on the unrelated definition of an "Event of Default" in the "Acceleration" provisions of Paragraph 5 of each Note (that do not mention the "Maturity Date"), since it is only that provision of the Notes that can trigger the higher Default Rate of interest. Upon the occurrence of an "Event of Default," the Default Rate of "six percent (6%) per annum applies "notwithstanding any provision to the contrary contained herein," but any such event, the occurrence of an "Event of Default," is explicitly conditioned on being "[a]t the option of the Lender." The "Event of Default" relevant here is the "failure of the Borrower to pay in full any amount due hereunder within thirty (30) days after the date when due." Consequently, even if there were some tension or conflict between the "Maturity Date" and that

- 9 -

of an acceleration of amounts due upon an "Event of Default" under the Notes, it would not affect the determination of when the Default Rate applies under the Notes.

Contrary to the Executors' contention, the Notes do not provide that the "Default Rate" of 6% automatically applies from August 31, 2017, thirty days from the date of William's failure to make a payment. Rather, the application of the Default Rate is dependent on the Executors' choice to exercise their option to accelerate the amounts due under the Notes (*see Puzzuoli v JPMorgan Chase Bank, NA*, 55 Misc 3d 417, 424-25 [Sup Ct, Dutchess County 2016]). As later defined in paragraphs 3 and 5 of the Notes, the "Default Rate" of 6% applies only upon an "Event of Default," but that, in turn, occurs only "[a]t the option of the Lender." Here, the Executors did not opt to trigger the acceleration provision and increase the interest rate to the 6% Default Rate until June 30, 2022, when, by the Executors' own reckoning, they made clear that, as Lender, they were choosing to exercise their option to accelerate all amounts due and demanded payment in full (Executor Hood Aff. at Paragraph 18; William's Memorandum of Law at 1; *see Wilmington Sav. Fund Soc'y, FSB v Fernandez*, 179 AD3d 79, 81 [4th Dept 2019] ["'Where the acceleration . . . is made optional with the holder of the note and mortgage, some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision, and until such action has been taken the provision has no operation'" quoting *Wells Fargo Bank, N.A. v Burke*, 94 AD3d 980, 982–983 (2d Dept 2012)]). The court thus modifies its decision from the bench in this one respect: that the default rate of interest of 6% shall run on the amounts due under the Notes from June 30, 2022.]

Having determined that William failed to make payment by or on August 31, 2017, and that interest at the rate of 6% applies from June 30, 2022, and the 1.18% rate of interest applies before then, the issue then becomes whether the 6% default rate of interest should be

- 10 -

compounded under the relevant provisions of the Notes. There is a discrepancy in the language used for interest under the Notes. Paragraph 1 of each Note provides for interest at the rate of 1.18%, "compounded annually." However, in Paragraph 3 of the Notes, which sets the "Default Rate" of 6% per annum, there is no mention of annual compounding. A basic rule of construction is that "the expression of one thing implies the exclusion of the other" (*Croteau v AC&S*, 41 AD3d 299, 302 [1st Dept 2007], citing Black's Law Dictionary 602 [7th ed.]). Thus, the mention of compounding interest excludes simple interest regarding the 1.18% rate, but the subsequent failure to mention compounding when the parties had done so previously, excludes compounding under the "Default Rate" (*see Rourke v Thomas Assoc.*, 216 AD2d 717, 718 [3d Dept 1995] [agreement to charge compound interest is never implied but must be express]; *see also R.F. Schiffmann Assoc., Inc. v Baker & Daniels LLP*, 147 AD3d 482 [1st Dept 2017]). The court consequently considers the "Default Rate" to impose simple rather than compound interest.

For each Note, the Executors shall have judgment against William directing payment of the respective principal amounts under each Note together with interest, compounded annually, at the rate of 1.18% earned thereon from August 2, 2016 to June 30, 2022, and thereafter annual simple interest shall accrue at the "Default Rate" of 6%.

Settle Decree.

Dated: October 15, 2024

_____
S U R R O G A T E

- 11 -